IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GARY HAMPTON,<br>TDCJ-CID NO. 776384, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-09-3519 |
| BETTY WILLIAMS, et al,<br>Individual Employees of TDCJ | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Gary Hampton, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed this civil rights action under 42 U.S.C. § 1983 claiming that TDCJ-CID officials violated his constitutional rights. Defendants, TDCJ-CID medical personnel and correctional officers, have filed a Motion for Summary Judgment (Docket Entry No. 20), supported by records and affidavits, requesting that the court dismiss the Hampton's lawsuit in its entirety. For the reasons explained below, defendants' motion will be granted except for Hampton's retaliation claim against Cade Crippin for the April 2009 incident.

## I.  **History and Claims**

**A.   Factual History**

On July 19, 2008, Gary Hampton, an inmate in the Ellis Unit, injured his left knee when he slipped and fell off his cell ladder while attempting to retrieve a folder off a shelf.[1]  Dr. Betty Williams examined Hampton on August 4, 2008.[2]  Hampton underwent unsuccessful arthrosporic surgery to repair the injury on August 14, 2008.[3]  Follow-up surgery was originally scheduled for September 22, 2008.[4]  However, this surgery was delayed for approximately 12 months.[5]

Due to the delay, Hampton began requesting additional care for his painfully swollen knee, submitting 17 communications to Williams over the course of the next year.[6]  Hampton received care

---

[1]Prisoner Civil Rights Complaint, Docket Entry No. 1, p. 4; Defendants' Motion for Summary Judgment and Brief in Support, Docket Entry No. 19, p. 1.

[2]Defendants' Motion for Summary Judgment and Brief in Support, Docket Entry No. 19, p. 13.

[3]Prisoner Civil Rights Complaint, Docket Entry No. 1, p. 4; Defendants' Motion for Summary Judgment and Brief in Support, Docket Entry No. 19, p. 1.

[4]Prisoner Civil Rights Complaint, Docket Entry No. 1, p. 4.

[5]Defendants' Motion for Summary Judgment and Brief in Support, Docket Entry No. 19, p. 1.

[6]Prisoner Civil Rights Complaint, Docket Entry No. 1, p. 4.

from various medical personnel, but did not see Williams again until August 18, 2009.[7]

Frustrated at the perceived indifference to his painful condition, Hampton wrote a letter to Shanta Crawford, the Medical Administrator for the Ellis Unit, threatening her with a lawsuit.[8] On February 19, 2009, Hampton sent a letter to Lannette Lithcum, UTMB Medical Director, complaining of the lack of care.

On February 22, 2009, Sargents Cade Crippin, Irma Fernandez, and J. Mueller entered Hampton's cell and confiscated his medical lay-ins, records, and passes, and his Smith Corona 2500 word processor, which Hampton claims contained 12 pages on the law of negligence and deliberate indifference that he was planning to use to file a suit against Williams, stored in its memory.[9] Hampton responded by filing a Step 1 Grievance regarding this incident, alleging that this act was done in retaliation for his letter-writing and preparation for a lawsuit.[10] Hampton later filed a Step 2 Grievance expressing his dissatisfaction with the resolution of the Step 1 Grievance.[11]

_____

[7]Defendants' Motion for Summary Judgment and Brief in Support, Docket Entry No. 19, p. 13.

[8]Prisoner Civil Rights Complaint, Docket Entry No. 1, p. 4.

[9]Id.; Id. at 3.

[10]Id. at 10.

[11]Id. at 12.

-3-

On April 16, 2009,[12] Sargent Crippin entered Hampton's cell and confiscated Hampton's medical boots, wraps, and crutches.[13] Hampton responded by filing a Step 1 Grievance regarding this incident, alleging that this act was done in retaliation for his filing of Grievances for the February incident.[14] Hampton later filed a Step 2 Grievance expressing his dissatisfaction with the resolution of the Step 1 Grievance.[15]

## B.   Plaintiff's Claims

Hampton brings civil rights claims under 42 U.S.C. § 1983 against Betty Williams, Shanta Crawford, Cade Crippin, Irma Fernandez, Kenneth Gaston, and Eileen Kennedy.   (Docket Entry No. 1).   Hampton alleges that Unit Physician Williams was deliberately indifferent in attending to his aftercare needs and

---

[12]Plaintiff's More Definite Statement states that this incident occurred on March 22, 2009.   Plaintiff's More Definite Statement, Docket Entry No. 9, p. 9.   However, Hampton's Step 1 Grievance regarding this incident suggests that it occurred on April 16, 2009.   Prisoner Civil Rights Complaint, Docket Entry No. 1, p. 14. Considering that the Texas Department of Criminal Justice timestamp indicates that the Step 1 Grievance was received on April 22, 2009, id., it seems more likely than not that this incident occurred on April 16, 2009, as stated in the Step 1 Grievance, rather than on March 22, 2009, as stated in the Plaintiff's More Definite Statement.   The court will consider the incident as occurring on April 16, 2009.

[13]Plaintiff's More Definite Statement, Docket Entry No. 9, p. 9-10.

[14]Prisoner Civil Rights Complaint, Docket Entry No. 1, p. 14.

[15]Id. at p. 16.

-4-

negligent in requesting medical treatment, that Medical Administrator Crawford failed to set up an appointment for him to see Williams and failed to reschedule an appointment at UTMB, and that Assistant Warden Gaston negligently failed to have the medical unit reschedule an appointment with UTMB. Id. at 3. Hampton accuses Sargent Crippin of confiscating his medical records, notes, and work product related to his claims against Williams and of confiscating and destroying his Smith Corona 2500 word processor, in retaliation of his filing of claims against Williams ("the February 2009 incident").[16] (Docket Entry No. 1, p. 3). Hampton also accuses Sargent Crippin of confiscating various medical supplies in retaliation for his filing of a grievance against Crippin for confiscating his medical records, notes, work product, and word processor ("the April 2009 incident"). (Docket Entry No.

---

[16]This allegation was properly exhausted through the administrative remedies available to Hampton. The Step 1 grievance that Hampton filed for the confiscation of medical records, notes, work product, and the word processor accuses Crippin and Fernandez of confiscating these items in violation of "PD22 Rule 22a and rule 41." Docket Entry No. 1, p. 10. PD-22 Rule 41 concerns "Denial of Uniform Access to Courts," and includes a prohibition on "retaliating against an offender for exercising the offender's right to file a grievance or complaint." TEXAS DEPARTMENT OF CRIMINAL JUSTICE, PD-22 (REV. 12): GENERAL RULES OF CONDUCT AND DISCIPLINARY ACTION GUIDELINES FOR EMPLOYEES 46, available at http://www.tdcj.state.tx.us/vacancy/hr-policy/pd-22.pdf (last visited Aug. 5, 2010). Hampton's Step 2 grievance filed for this incident specifically mentions that he construed the officers' actions as retaliatory. Docket Entry No. 1, p. 12. Therefore, the allegation that Crippin and Fernandez acted in retaliation was exhausted through administrative remedies.

1, p. 5).   Hampton accuses Sargent Fernandez[17] of assisting Sargent
Crippin with the confiscation and destruction of the word processor
during the February 2009 incident.   (Docket Entry No. 1, p. 3).
Finally, Hampton accuses Senior Warden Kennedy of failing to
investigate his retaliation complaint against Crippin and failing
to have his prescribed medical supplies returned.   Id.

## II.   **Claims Against Crawford, Kennedy, and Gaston**

### A.   **Applicable Law**

42 U.S.C. § 1997e(a) states:

"No action shall be brought with respect to prison
conditions under section 1983 of this title, or any other
Federal law, by a prisoner confined in any jail, prison,
or other correctional facility until such administrative
remedies as are available are exhausted."

42 U.S.C. § 1997e(a). (2006) (emphasis added).

"[A] prisoner must complete the administrative review process
in accordance with the applicable procedural rules, including
deadlines, as a precondition to bringing suit in federal court."
Woodford v. Ngo, 126 S. Ct. 2378, 2384 (2006).   "[F]ailure to

---

[17]Sargent Fernandez appears to have been a Lieutenant at the
time of the original filing.   Fernandez is described in the
grievance Hampton filed regarding the incident as "his [Crippin's]
lt (Female)."   Prisoner Civil Rights Complaint, Docket Entry No. 1,
p. 10.

exhaust is an affirmative defense." Jones v. Bock, 127 S. Ct. 910, 921 (2007).

In Texas, an inmate must follow the two-step grievance process to exhaust administrative remedies. Johnson v. Ford, 261 Fed. Appx. 752, 755 (5th Cir. 2008) (citing Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004)). The Step 1 grievance, which must be filed within fifteen days of the complained-of incident, is handled within the prisoner's facility. Johnson, 385 F.3d at 515; TEXAS DEPARTMENT OF CRIMINAL JUSTICE, OFFENDER ORIENTATION HANDBOOK 52 (Nov. 2004), available at http://www.tdcj.state.tx.us/publications/cid/OffendOrientHbkNov04.pdf (last visited Aug. 4, 2010). After an adverse decision at Step 1, the prisoner has ten days to file a Step 2 grievance, which is handled at the state level. Johnson, 385 F.3d at 515; TEXAS DEPARTMENT OF CRIMINAL JUSTICE, supra, 52. "[A] prisoner must pursue a grievance through both steps for it to be considered exhausted." Johnson, 385 F.3d at 515. "[A] strict approach" is taken to the exhaustion requirement. Ford, 261 Fed. Appx. at 755 (quoting Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003).

## B.  Application of the Law to Claims

Hampton has not filed a Step 1 grievance against Kennedy, Crawford, or Gaston. Because Hampton has not exhausted his administrative remedies against these parties, summary judgment will be granted as to his claims against them.

-7-

## III. Claims Against Williams

**A.    Applicable Law**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment. . . . [D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 97 S. Ct. 285, 291 (1976). "[S]ubjective recklessness as used in the criminal law . . . [is] the test for 'deliberate indifference' under the Eighth Amendment." Farmer v. Brennan, 114 S. Ct. 1970, 1980 (1994). Deliberate indifference, an "extremely high standard to meet," requires the prisoner to demonstrate that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Domino v. Tex. Dept. of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001).

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982). Resolving a qualified immunity defense requires answering two inquiries: (1) whether, in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct

-8-

violated a constitutional right and (2) whether the right at issue
was "clearly established" at the time of defendant's alleged
misconduct, such that it would be clear to a reasonable official
that his conduct was unlawful in the situation he confronted.
Saucier v. Katz, 121 S. Ct. 2151, 2156 (2001) (overruled on other
grounds). Either inquiry may be addressed first "in light of the
circumstances in the particular case at hand." Pearson v.
Callahan, 129 S. Ct. 808, 818 (2009).

"It is firmly established that negligent or mistaken medical
treatment or judgment does not implicate the [E]ighth [A]mendment
and does not provide the basis for a civil rights action." Graves
v. Hampton, 1 F.3d 315, 319 (5th Cir. 1993) (abrogated on other
grounds).

**B.   Application of Law to Claims**

Even when interpreting the facts related to Williams's
attendance to Hampton's aftercare needs in the light most favorable
to Hampton, the court concludes that her conduct was not done with
the subjective recklessness required to demonstrate "deliberate
indifference," and thus did not violate Hampton's Eighth Amendment
right to be free of unnecessary and wanton infliction of pain.

Hampton alleges that Williams's failure to examine him during
the period of time following his surgery constituted "deliberate
indifference." While Williams concedes that she did not examine

-9-

Hampton for the period of time between August 4, 2008, and August 18, 2009,[18] Hampton's medical records indicate that the Ellis Unit medical staff was generally attentive to Hampton's knee problems, responding to his approximately nineteen requests for treatment by prescribing painkillers,[19] fitting Hampton with knee braces and crutches,[20] and providing wraps for the joint.[21]  Even though Williams did not attend to Hampton during this period of time, because he was receiving ample care from other providers for his knee during this time, the court concludes that the fact Williams did not examine Hampton does not indicate that her conduct was "subjectively reckless."   Thus, Williams is entitled to qualified immunity for claims arising from her failure to examine Hampton, so summary judgment will be granted.

Hampton also alleges that Williams delayed his follow-up appointments and surgery, and this delay constituted "subjective recklessness."   But Williams has no authority to schedule appointments or surgery, as her authority as a unit level physician

---

[18]Defendants' Motion for Summary Judgment and Brief in Support, Docket Entry No. 19, p. 13.

[19]Plaintiff's Medical Records from TDCJ Health Services Archive with Business Records Affidavit (sealed), Docket Entry No. 21, Document 21-1, p.5; id. at Document 21-2, p. 17; id. at Document 21-4, p. 1; id. at Document 21-4, p. 6.

[20]Id. at Document 21-3, p. 23.

[21]Id. at Document 21-2, p. 20.

only permits her to request referrals for these matters.[22]
Furthermore, the catastrophic damage caused by Hurricane Ike shut
down UTMB until January 2009,[23] which caused Hampton's appointments
and surgery to be delayed.  The court concludes that Williams was
not "subjectively reckless" in delaying Hampton's follow-up
appointments and surgery because she had no authority to schedule
these matters and because Hurricane Ike accounted for the delay.
Thus, Williams is entitled to qualified immunity for claims arising
from her alleged delay of Hampton's follow-up appointments and
surgery, so summary judgment will be granted.

Finally, Hampton alleges that Williams was negligent in
requesting medical treatment.  But these claims do not provide a
cause of action under section 1983 because negligence "does not
implicate the [E]ighth [A]mendment and does not provide the basis
for a civil rights action."  <u>Graves</u>, 1 F.3d at 319.  Summary
judgment will therefore be granted as to all of Hampton's claims
against Williams.

_____

[22]Id. at Exhibit E, Affidavit of Bryan Hicks, p. 3.

[23]<u>Id.</u> at p. 2.

-11-

## IV.  **Claims Against Fernandez and Crippin**

**A.**   **Applicable Law**

"To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.  The inmate must allege more than his personal belief that he is the victim of retaliation.  Mere conclusionary allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim.  The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'"  Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999) (citations omitted).

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 102 S. Ct. 2727, 2738 (1982).  Resolving a qualified immunity defense requires answering two inquiries: (1) whether, in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right and (2) whether the right at issue was "clearly established" at the time of defendant's alleged

misconduct, such that it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. Saucier v. Katz, 121 S. Ct. 2151, 2156 (2001) (overruled on other grounds). Either inquiry may be addressed first "in light of the circumstances in the particular case at hand." Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

## B.   Application of the Law to Claims Due to the February 2009 Incident

Hampton has failed to produce direct evidence of motivation or allege a chronology of events from which retaliation by Crippin or Fernandez could be inferred. Hampton alleges that prior to his writing of letters to Lanette Lithcum and Williams he never had any problems with correctional officers disrupting his legal work, despite having been on the unit for 13 years.[24] Hampton's reliance on the sequence of events does not support the inference of intent to retaliate on the part of Crippin and Fernandez for Hampton's writing of these letters. See Eulow v. Tishomingo County, Miss., 45 F.3d 885, 888-89 (5th Cir. 1995) (concluding that the plaintiff's alleged sequence of events, controverted by the defendants, did not support an inference of retaliatory intent). Therefore, summary judgment for Hampton's claims against Fernandez

---

[24]Plaintiff's More Definite Statement, Docket Entry No. 9, p. 11.

and Hampton's claims against Crippin for the February 2009 incident
will be granted.

## C.  Application of the Law to Claims Against Crippin Due to the April 2009 Incident[25]

Crippin has not moved for summary judgment on this claim.
Crippin's answer asserts the defense of qualified immunity against
all claims.[26]  Determining whether this defense applies to the April
2009 incident requires answering two inquiries: (1) whether, in the
light most favorable to the party asserting the injury, the facts
alleged show the official's conduct violated a constitutional right
and (2) whether the right at issue was "clearly established" at the
time of defendant's alleged misconduct, such that it would be clear
to a reasonable official that his conduct was unlawful in the
situation he confronted.  The right of inmates to access the courts
is "clearly established," for "[i]t has long been recognized that
prisoners generally enjoy the constitutional right of access to the
court."  Jones, 188 F.3d at 325 (citing Bounds v. Smith, 97 S. Ct.
1491, 1494-95 (1977)).  Thus, the key question is whether, in the
light most favorable to Hampton, the facts alleged show that

---

[25]Fernandez was not involved in the April 2009 incident.

[26]Defendants Williams, et. al., Original Answer and Jury
Demand, Docket Entry No. 12, p. 3.

-14-

Crippin's conduct constituted retaliation, thereby violating Hampton's right of access to the court.

A retaliation claim under section 1983 requires alleging: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. Hampton has alleged his constitutional right of access was impeded. Hampton has also alleged facts specific enough to support a finding that Crippin's conduct during the April 2009 incident was intended to retaliate against Hampton for exercising that right; Hampton alleged that Crippin stated

> [T]hat he would make my life miserable as long as I was trying to file on him in a town he owned the courts in and if I continued, he would have me shipped to West Texas and placed on a gang farm/unit where I'd suffer everyday[,] instead of staying here where I could finish college."[27]

Hampton has alleged retaliatory adverse acts – the confiscation of his crutches, medical wraps, medical boots, and all property papers.[28] These acts were adverse because Hampton was suffering from a knee injury. The confiscation of medical supplies that would ease the symptoms of the injury would increase his suffering, and the confiscation of the property papers would impede

---

[27]Plaintiff's More Definite Statement, Docket Entry No. 9, p. 10.

[28]Prisoner Civil Rights Complaint, Docket Entry No. 1, p. 5.

Hampton's ability to recover these supplies. Interpreting the facts in the light most favorable to Hampton, Hampton's exercise of his right of access caused the confiscation of these items.  If, when Hampton confronted Crippin about the confiscation, Crippin responded by threatening to have Hampton "shipped" to a less desirable location should Hampton continue to file grievances against Crippin,[29] it is reasonable to infer that the confiscation also was caused by the filing of grievances against Crippin. Furthermore, Hampton's medical records indicate that he had been issued these medical supplies to treat his knee, leading to the inference that he had a right to possess these items.  Since Crippin has not addressed this claim in his motion for summary judgment and because plaintiff's allegations are sufficient to overcome the defense of qualified immunity with respect to Hampton's retaliation claim against Crippin arising from the April 2009 incident, summary judgment on that claim will be denied.

### IV.  Conclusion and Order

For the reasons explained above, the court **ORDERS** the following:

> 1.  Defendants Williams, Crawford, Fernandez, Gaston, and Kennedy's Motion for Summary Judgment (Docket Entry No. 19) is **GRANTED.**

---

[29]Id.; Plaintiff's More Definite Statement, Docket Entry No. 9, p. 10.

-16-

2.   Defendant Crippin's Motion for Summary Judgment
     for Hampton's retaliation claim for the February
     2009 incident is **GRANTED**.

3.   Defendant Crippin's Motion for Summary Judgment for
     Hampton's retaliation claim for the April 2009
     incident is **DENIED**.

4.   Defendant Crippin's shall file an Amended Motion
     for Summary Judgment within thirty days of the
     date of this Order if he determines that such a
     motion is appropriate.  If Crippin concludes that
     a motion for summary judgment is not appropriate,
     he will advise the court within thirty days of the
     date of this Order.

**SIGNED** at Houston, Texas, on this 11ᵗʰ day of August, 2010.

                                        SIM LAKE
                          UNITED STATES DISTRICT JUDGE

-17-